**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 07-20563-CR-GRAHAM**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

FABIAN BERNAL-BERNITEZ,
MARIO M. SANTIBANEZ-ANTUNEZ,
FREDY VILLAFUERTE, and
JESUS CERVANTES-GUZMAN,

    Defendants.
_____/

**ORDER**

**THIS CAUSE** came before the Court upon Defendant Mario M. Santibanez-Antunez's Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29.

**I. BACKGROUND**

On July 19, 2007, the Government issued a two-count indictment against Fabian Bernal-Benitez (Benitez or Bernal), Mario Miguel Santibanez-Antunez (Santibanez), Fredy Villafuerte (Villafuerte) and Jesus Cervantes-Guzman (Guzman), collectively "Defendants" [D.E. 26]. The Indictment charged the Defendants, inter alia, with conspiring to possess with intent to distribute five-hundred (500) grams or more of cocaine and attempted possession with intent to distribute five-hundred (500) grams or more of cocaine, both in violation of Title 21 U.S.C. §§ 841 and 846. On August 31, 2007, a Superceding Indictment was issued wherein three (3) additional

counts were added, which charged Santibanez, Guzman and Benitez with violations related to those Defendants' alleged illegal reentry into the United States [D.E. 42].

The three Defendants charged with illegal re-entry indicated that they each intended to enter a guilty plea on those Counts. However, all four (4) Defendants went to trial on the drug conspiracy and attempted possession charges. The trial commenced on October 5, 2007, and the Government presented two witnesses, a confidential informant and a federal agent, in its case-in chief. Only one Defendant, Santibanez took the stand and testified in his own behalf in the Defendants' case. The government then presented one rebuttal witness, an officer from the local police department.

By all accounts, on July 10, 2007, a meeting occurred in the parking lot of a Taco Bell in North Miami Beach, between one or more of the Defendants and a confidential informant who was working in conjunction with law enforcement officials. The four Defendants arrived together in one vehicle at the Taco Bell. According to the Government, the purpose of the meeting was for the Defendants to purchase cocaine. At some point, the confidential informant and one of the Defendants walked to the trunk of the confidential informant's car. Shortly thereafter, the police surrounded the cars and arrested the four Defendants.

At trial, Carlos Mejia, a former drug dealer and current FBI confidential informant, testified, in relevant part, that in July

of 2007, he had several telephone conversations with a person named "Jose" regarding the purchase of cocaine. Mr. Mejia stated that he eventually arranged to meet with someone sent by "Jose" at the parking lot of Taco Bell in North Miami Beach. In court, Mr. Mejia identified Fabian Bernal-Benitez as the person with whom he met at Taco Bell and testified that there were three other persons in the car with Mr. Benitez, who Mr. Mejia identified as the other three Defendants. According to Mr. Mejia, one other person got out of the car with Mr. Benitez and was present when he and Benitez discussed the drug transaction, but Mr. Mejia could not remember which Defendant it was. Mr. Mejia stated that two other people remained in the car and that he greeted one of them. Mr. Mejia testified that he was shown money but could not recall which Defendant showed it to him. Mr. Mejia testified that he then told Mr. Benitez to come over to the trunk of the other car. He and Mr. Benitez went over to his car to look at the cocaine in the trunk of the car, but he couldn't recall if anybody else went with them.

On cross-examination, Mr. Mejia testified that he remembered seeing Defendant Santibanez's face but couldn't recall what Mr. Santibanez did exactly at the Taco Bell. He further testified that he didn't remember where the other Defendants were when he showed Mr. Benitez the cocaine. Mr. Mejia further testified that he was wearing a wire during the drug transaction and confirmed that the word "cocaine" was never used during the conversation that he had

with Benitez in the parking lot.  He further confirmed that he never spoke to Defendant Santibanez on the telephone.

Agent Scott Wiegmann also testified and stated that he observed the meeting at Taco Bell on July 10, 2007 between Mr. Mejia and the Defendants.  Agent Wiegmann testified that Defendant Benitez got out of the car first and met with Mr. Mejia, and then Mr. Santibanez got out ten seconds later and joined the two.  He testified that then Mr. Mejia and Mr. Benitez only, walked over to Mr. Mejia's car, where Mr. Benitez was shown the cocaine.  Agent Wiegmann stated that he didn't recall what Mr. Santibanez was doing when Benitez and Mejia started to walk over to Mejia's car.  Agent Wiegmann testified that the video camera that he had to tape the transaction malfunctioned, so there is no videotape of the transaction between the parties.

Defendant Mario Santibanez took the stand and testified, <u>inter alia</u>, to the following relevant facts.  He entered the United States illegally from Mexico through Texas.  Once in Texas, he traveled to Florida because he heard that work was available there for undocumented aliens.  When he arrived in Central Florida he called back to Mexico to get the telephone number of co-defendant Fabian Bernal, who he knew from his hometown in Mexico.  After Santibanez contacted Fabian Bernal, Bernal assisted him in getting work cleaning yards.  Santibanez then asked Bernal how he could get to Homestead so he could get work and Bernal told him that he would

either take him to Homestead or find someone to take him.

On July 10, 2007, Bernal came by the house where Santibanez was staying and told Santibanez that he was taking a trip and could take Santibanez to Miami so he could get to Homestead. Santibanez denied that he was going to Miami to participate in a drug deal or that he knew anything about a drug deal. Santibanez admitted that he drove the car to Miami. He testified that he did so to pay back Bernal the favor for giving Santibanez a ride to Miami, as Santibanez had no money. Santibanez testified that when he and the Defendants arrived in Miami, they went to the parking lot of a Taco Bell. Santibanez testified that he thought they were going to Taco Bell to get something to eat. He stated that Benitez then got out of the car and walked to the rear of the car and another person got out of another car parked in the lot and met with Benitez. After some time passed, Santibanez got out of the car to stretch and was greeted by the person from the other car. Santibanez testified that he then moved away from the two and that the two went around the car. Santibanez denies that he heard the conversation or knew what the they were discussing. Santibanez testified that he then spoke to Villafuerte about eating and that the two were walking toward the restaurant when they were surrounded by the police.

At the close of the Government's evidence, Defendant Santibanez moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, and renewed the motion

5

again at the close of all of the evidence.  Each time, the Court reserved ruling on the Defendant's motions.  On October 11, 2007, the Jury began to deliberate on the case.  On October 15, 2007, the Jury indicated that they could not reach a verdict on one of the Defendants.  On October 16, 2007, the Jury issued a statement indicating that they had reached a unanimous decision on Defendants Villafuerte, Bernal and Cervantes but were "hopelessly deadlocked" on a verdict for Defendant Santibanez.

On October 16, 2007, Defendant Santibanez renewed his Motion pursuant to Rule 29.  The Court heard arguments from the Government and Defendant Santibanez and then granted the Motion and granted a judgment of acquittal against Santibanez.

## II. LAW & DISCUSSION

### A. Federal Rule of Criminal Procedure 29

Rule 29. Motion for a Judgment of Acquittal, provides in relevant part,

> (a) Before Submission to the Jury. After the government closes its evidence or after the close of all the evidence, <u>the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction</u>. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.
>
> (b) Reserving Decision. The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of

> guilty or is discharged without having returned a verdict. If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved. (emphasis added).

In U.S. v. Allen, 302 F. 3d 1260, 1262 (11th Cir. 2002), the Eleventh Circuit stated,

> ...evidence is sufficient to support a criminal conviction if, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.

Id., citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781 (1979). Applying this standard to the case against Mr. Santibanez, the Court concludes that no rational trier of fact could find, beyond a reasonable doubt, that Mr. Santibanez conspired to possess or attempted to possess cocaine as charged in the Indictment.

More specifically, the Eleventh Circuit has stated that a conspiracy is "an agreement to commit an unlawful act." United States v. Toler, 144 F.3d 1423, 1425 (11th Cir. 1998) (citation and internal quotations omitted). In order to support a conviction for a drug conspiracy pursuant to 21 U.S.C. §§ 841 and 846, the government must prove beyond a reasonable doubt: (1) that an illegal agreement existed to possess with the intent to distribute illegal drugs; (2) that the defendant knew of the agreement; and (3) that the defendant knowingly and voluntarily joined in, or participated in, the agreement. United States v. Charles, 313 F.3d 1278, 1284 (11th Cir. 2002) (per curiam). Once the drug conspiracy

7

has been shown to exist, "a defendant can be convicted even if his or her participation in the scheme is slight by comparison to the actions of other co-conspirators." Toler, 144 F.3d at 1428. However, mere presence at the scene of the crime will not support a drug conspiracy conviction; the government must establish, by direct or circumstantial evidence, the defendant's "knowing participation" in the conspiracy. United States v. Villegas, 911 F.2d 623, 627-28 (11th Cir. 1990).

In U.S. v. Hernandez, 896 F. 2d 513 (11th Cir. 1990)(holding modified on other grounds by, Toler, 144 F.3d at 1426 n. 3), the Eleventh Circuit examined a factual scenario very similar to the one at bar. The Court overturned a conviction for one defendant despite the fact that the defendant accompanied a co-defendant to the trunk of a car where a drug transaction occurred and stood by while the co-defendant handed a package containing cocaine to an undercover officer. Id. at 516-17. Similarly, in U.S. v. Rogers, the Eleventh Circuit examined various cases involving factual scenarios similar to the case, sub judice, and stated,

> We have carefully examined the cases in this circuit factually similar to the one at bar....While some may be similar, each case turns on its own facts... In [U.S. v.] Littrell a reasonable jury necessarily had to entertain a reasonable doubt whether the defendant was a knowing participant in the conspiracy. The defendant's only involvement in the conspiracy was in driving a car in which cocaine was present in the glove box. This evidence was not enough to negate the reasonable, innocent explanation for the defendant's conduct that he was an unknowing messenger boy.

U.S. v. Rogers, 701 F.2d 871, 875 n. 3 (11th Cir. 1983)(discussing U.S. v. Littrell, 574 F.2d 828 (5th Cir. 1978)). The Eleventh Circuit then distinguished the case before it as follows:

> In the case at bar, [the defendant] carried a paper bag filled with a large amount of money up to the office door of a warehouse loaded with marijuana, then waited outside to drive, and did drive, a truck loaded with marijuana, and was allegedly present at a meeting the night before in which the marijuana deal was discussed. We believe this evidence excludes every reasonable, innocent explanation for the defendant's conduct. In Littrell, the evidence did not negate all such explanations.

Id. As to the charge of attempted possession, the Eleventh Circuit has stated, "[p]ossession may be actual or constructive, joint or sole." United States v. Gunn, 369 F.3d 1229, 1234 (11th Cir.2004) (per curiam). The possession must also be knowing. United States v. Farris, 77 F.3d 391, 395 (11th Cir.1996). "A defendant has actual possession of a substance when he has direct physical control over the contraband." United States v. Edwards, 166 F.3d 1362, 1363 (11th Cir.1999). "A defendant has constructive possession of a substance when he has some form of control other than direct physical control." Id. at 1364. However, the Eleventh Circuit has held that mere presence at the scene where drugs are found is not enough to support a criminal conviction for possession. See Holmes v. Kucynda, 321 F.3d 1069, 1081 (11th Cir.2003).

Based on the foregoing, in the instant case, even when viewing the evidence in the light most favorable to the government, a

rational trier of fact could not find that the elements of a conspiracy to possess cocaine or attempted possession of cocaine against Defendant Santibanez, could be established beyond a reasonable doubt based upon the evidence presented at trial. The testimony adduced in the Government's case-in-chief against Santibanez only demonstrated that Santibanez was present with the other Defendants at the parking lot where the transaction between Benitez and the confidential informant occurred, that Santibanez drove the car to the location where the transaction took place, and that Sanitbanez was in the presence of Defendant Benitez and the confidential informant for some portion of their interaction, although it is not clear for how long.

In addition, as the Court reserved ruling on the Rule 29 Motion, the Court may consider all of the evidence presented at trial, including the testimony of Defendant Santibanez. See Fed.R.Crim.P. 29 (b). Santibanez provided unrefuted testimony that he was relatively new to the area, that he did not know that a drug transaction was scheduled to take place, that he was with the other Defendants in order to get a ride to Homestead, and that he had no money. There is no statement or other evidence linking Santibanez to the confidential informant or the drug transaction, other than a greeting made by Santibanez after the confidential informant spoke to him. In addition, there is no evidence that drugs were present in the car driven by Santibanez or that he had

knowledge of the money in the car. Thus, there is insufficient evidence, either direct of circumstantial, to support a finding beyond a reasonable doubt that there was an agreement by Santibanez to possess or purchase drugs or that he knew of such an agreement and that he knowingly joined in or participated in such an agreement. Nor is there sufficient evidence that Santibanez attempted to exercise actual or constructive possession over any narcotics.

Thus, this case is akin to the "mere presence" line of cases of the Eleventh Circuit, wherein the evidence has been found to be insufficient to sustain a conviction against a defendant. See e.g. U.S. v. Balderas, 163 Fed. Appx. 769, 778-80 (11th Cir. 2005)(discussing sufficiency of evidence cases where narcotics conspiracy alleged); U.S. v. Facey, No. 06-12731, slip op. (11th Cir., May 31, 2007)(collecting and discussing "mere presence" cases). Accordingly, while this Court does not conclude that it is impossible that the Defendant Santibanez was involved in a conspiracy, the Court does find that the Government has failed to meet its burden under these circumstances. Cf. U.S. v. Lyons, 53 F.3d 1198 (11th Cir. 1995)(finding sufficient evidence where evidence showed defendant co-conspirator was well aware of nature of the transaction taking place as defendant was present when cocaine sold on two separate occasions). Simply put, there was not enough evidence presented at trial to demonstrate that a reasonable

11

jury could conclude that Santibanez conspired with the other Defendants to possess cocaine or otherwise attempted to possess cocaine himself.

### III. CONCLUSION

Accordingly, based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendant's Motion for Dismissal Pursuant to Federal Rule Of Criminal Procedure 29 is **GRANTED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 20th day of December, 2007.

_____
DONALD L. GRAHAM
UNITED STATES DISTRICT JUDGE